**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **SONJA ROSS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **DELTA AIR LINES, INC.,** | ) | **CASE NO. 1:2025CV06418** |
| | ) | |
| | ) | **JURY DEMAND** |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT FOR TRADE SECRET MISAPPROPRIATION, BREACH OF CONTRACT, VIOLATION OF THE AUTOMATIC STAY, AND RELATED RELIEF

**COMES NOW**, Plaintiff **Sonja Ross** ("Plaintiff" or "Ross"), by and through undersigned counsel, brings this Complaint against Defendant **Delta Air Lines, Inc.** ("Delta") and alleges as follows:

### I. NATURE OF ACTION

1. This action arises from Delta Air Lines, Inc.'s unauthorized use, disclosure, and continued control of QrewLive™, a proprietary aviation communications platform conceived and developed by Plaintiff Sonja Ross for real-time crew coordination and operational management.

2. In 2016, Delta executed a Mutual Non-Disclosure Agreement ("2016 NDA") with MABA Holdings, LLC—the entity through which Craig Alexander presented Plaintiff's QrewLive™ platform—identifying *"QrewLive Communications"* as the subject project

and limiting Delta's use of the materials to evaluating a potential business relationship. Delta nevertheless integrated QrewLive™ concepts and architecture into its internal system later branded Family Flight Communications ("FFC"), launched publicly in 2018, without authorization or compensation.

3. On July 15, 2021, while Plaintiff's Chapter 7 bankruptcy case (*In re Sonja Nicole Williams*, Case No. 19-56304-pmb, Bankr. N.D. Ga.) remained open and QrewLive™, its software, and the related claims were property of the bankruptcy estate, Craig Alexander filed *Alexander v. Delta Air Lines, Inc.*, No. 21A03275 (DeKalb Cty. State Ct.). That case, and Delta's active participation in it, constituted acts to exercise control over estate property in violation of 11 U.S.C. § 362(a)(3).

4. On December 12, 2024, the Bankruptcy Court expressly found "that the Claims and the Debtor's interest in the Software are property of the Debtor's bankruptcy estate, and that neither the Claims nor the Debtor's interest in the Software was abandoned by the Chapter 7 Trustee prior to this case being closed." (*Dkt. 224 at 5.*) Despite receiving notice of that order, Delta continued to litigate QrewLive-related issues and operate FFC through February 26, 2025, when the case closed and all unadministered assets—the Claims, QrewLive™, and the 2016 NDA—revested in Plaintiff under 11 U.S.C. § 554(c).

5. Plaintiff asserts seven interrelated causes of action:

    1. Misappropriation of Trade Secrets under the Defend Trade Secrets Act (18 U.S.C. § 1836 et seq.);

    2. Misappropriation of Trade Secrets under the Georgia Trade Secrets Act (O.C.G.A. §§ 10-1-760 et seq.);

3.  Breach of Contract (2016 NDA);

4.  Violation of the Automatic Stay (11 U.S.C. §§ 362(a)(3), 362(k));

5.  Declaratory and Injunctive Relief;

6.  Unjust Enrichment (pled in the alternative); and

7.  Punitive Damages and Attorneys' Fees for willful and malicious conduct.

6.  Plaintiff seeks compensatory, exemplary, and punitive damages; declaratory and injunctive relief restoring her rights in QrewLive™; and a determination that Delta's conduct from "November 29, 2023" to "February 26, 2025," constituted willful violations of the Bankruptcy Code and federal trade-secret law.

7.  This case asks a straightforward question: whether a corporation that knowingly benefited from a bankruptcy debtor's intellectual property and disregarded federal court orders may evade accountability. Federal law and equity say it cannot.

## II. PARTIES, JURISDICTION, AND VENUE

8.  Plaintiff Sonja Ross ("Plaintiff") is a citizen and resident of Fulton County, Georgia.

9.  Defendant Delta Air Lines, Inc. ("Delta") is a Georgia corporation with its principal executive offices at 1030 Delta Boulevard, Atlanta, Georgia 30354, and may be served through its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092. At all relevant times, Delta acted through its officers, employees, and authorized representatives.

10. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because the action arises under the Defend Trade Secrets Act (18 U.S.C. § 1836 et seq.) and 11 U.S.C. §§

362(a)(3), 362(k). Jurisdiction also exists under 28 U.S.C. § 1334(b) because the claims

arise in and relate to Plaintiff's bankruptcy case (*In re Sonja Nicole Williams*, Case No.

19-56304-pmb) and involve property of that estate subject to the Bankruptcy Court's

exclusive jurisdiction under § 1334(e)(1).

11. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's

state-law claims—including those under the Georgia Trade Secrets Act and for breach of

contract, unjust enrichment, and attorneys' fees—because they arise from the same

nucleus of operative facts as the federal claims.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Delta maintains

its principal place of business in Atlanta, Georgia, and a substantial part of the events

giving rise to these claims occurred here, including execution of the 2016 NDA, Delta's

receipt and use of QrewLive™ materials, and Delta's development and operation of

Family Flight Communications. Venue is also proper under 28 U.S.C. § 1409(a) because

the claims arise from property of the bankruptcy estate administered in this District.

### III. FACTUAL BACKGROUND

13. Plaintiff conceived and developed QrewLive™ between 2009 and 2014 as a proprietary,

role-based communication and coordination platform for airline flight crews, dispatchers,

and operations personnel. QrewLive™ integrated secure, role-specific messaging,

event-status tracking, and workflow automation to allow authorized aviation staff to

coordinate duties in real time without exchanging personal contact information.

14. The QrewLive™ ecosystem originally comprised three modules—QTalk, QCentral, and QDirect—which together uniquely bridges the communication gap between Flight Crews and Flight Operations while providing analytics, measurement and key performance indicators to significantly reduce hold time, track communications and increase work-flow efficiency within a controlled digital environment. Its architecture, interface logic, and data structures were uniquely designed by Plaintiff and constitute confidential and proprietary information having independent economic value from not being generally known or readily ascertainable by others.

15. On or about August 16, 2016, Delta Air Lines, Inc. executed a written Non-Disclosure Agreement ("NDA") drafted by Delta for the purpose of evaluating Plaintiff's proprietary QrewLive™ platform and related business concepts. The NDA expressly provides that each party shall hold in confidence and not use for any purpose other than evaluation any confidential or proprietary information disclosed pursuant to the agreement. A true and correct copy of the NDA is attached hereto as Exhibit E and incorporated by reference.

16. The NDA was originally drafted by Delta and was later filed by Delta as an exhibit in related state-court proceedings involving Craig Alexander and MABA Holdings, LLC (Case No. 21A03275, DeKalb County State Court). Delta's own filing of the NDA in those proceedings confirms its authenticity, execution, and applicability to the QrewLive™ disclosures that form the basis of this action. The same NDA is attached hereto as Exhibit E.

17. From inception, Plaintiff maintained the secrecy of QrewLive™ through limited access, password-protected files, and nondisclosure agreements. All drafts and technical materials were marked confidential and shared only under strict confidentiality.

18. In 2016, Plaintiff's proprietary QrewLive™ platform was presented to representatives of Delta for the purpose of evaluating a potential business relationship, which led to execution of the 2016 NDA identifying *"QrewLive Communications"* as the subject project.

19. To facilitate those discussions, Craig Alexander, then owner and manager of MABA Holdings, LLC[1], represented that he could assist Plaintiff in presenting QrewLive™ to Delta. Acting through Alexander, Delta and MABA executed the 2016 NDA on August 31, 2016, identifying *"QrewLive Communications"* as the subject project and obligating both parties to maintain confidentiality and to use the information solely to evaluate a potential business relationship.

20. Although the 2016 NDA was executed in MABA's name, the materials disclosed to Delta originated entirely from Plaintiff, who was the inventor and source of the proprietary system. MABA served only as an intermediary through which the NDA was signed. Delta knew or, at minimum, should have known that MABA Holdings acted solely as a conduit for Plaintiff's disclosures and that Plaintiff was the real party in interest under the NDA.

---

[1] MABA Holdings, LLC is an Ohio limited liability company owned and controlled by Craig Alexander. MABA served solely as the contracting intermediary through which Delta executed the 2016 Mutual Non-Disclosure Agreement. All confidential materials provided to Delta under that agreement originated from Plaintiff Sonja Ross, the creator and beneficial owner of the QrewLive™ platform; MABA Holdings or Craig Alexander did not possess or convey any independent ownership interest in QrewLive™ or its intellectual property.

21. Following execution of the NDA, Plaintiff's proprietary materials—including concept decks, wireframes, and functional diagrams—were presented to Delta representatives by or through Alexander as part of the QrewLive™ evaluation process. All such materials were marked or treated as confidential and provided under the NDA's restrictions. Plaintiff never authorized Delta to use or commercialize QrewLive™ beyond that evaluation.

22. After receiving QrewLive™ materials, Delta continued to request additional information through 2016 and 2017 while representing that it was assessing the platform internally. Without Plaintiff's knowledge or authorization, Delta began developing an internal communications system mirroring QrewLive™'s architecture, including its role-based crew-to-crew and operations messaging, event tracking, and centralized workflow features.

23. In November 2018, Delta publicly announced Family Flight Communications ("FFC"), an internal platform for crew coordination and operational updates. FFC's functional scope and interface closely paralleled QrewLive™'s design as disclosed under the 2016 NDA.

24. Delta never sought or obtained a license to incorporate QrewLive™ concepts or materials. Its use of those materials violated the NDA and constituted misappropriation of trade secrets under federal and Georgia law. Plaintiff received no credit or compensation for Delta's use of her work.

25. Delta's unauthorized use and disclosure of QrewLive™ deprived Plaintiff of the opportunity to license or commercialize her proprietary platform, destroyed the secrecy

that gave it economic value, and enabled Delta to accelerate and reduce the cost of developing its competing system, Family Flight Communications ("FFC"). As a result, Plaintiff suffered substantial financial and reputational harm, including the loss of exclusive control over her invention and the erosion of its market potential.

26. On April 23, 2019, Plaintiff filed a Chapter 7 petition in the U.S. Bankruptcy Court for the Northern District of Georgia (*In re Sonja Nicole Williams*, Case No. 19-56304-pmb). Upon filing, QrewLive™, its software, the 2016 NDA, and all related claims became property of the bankruptcy estate under 11 U.S.C. § 541(a) and were protected by the automatic stay imposed by § 362(a).

27. No abandonment or administration of QrewLive™ occurred before the case initially closed; the assets therefore remained estate property. A discharge entered August 26, 2021 did not alter that status.

28. On July 15, 2021, while the bankruptcy case was still open, Craig Alexander filed *Alexander v. Delta Air Lines, Inc.*, No. 21A03275 (DeKalb Cty. State Ct.), asserting rights in QrewLive™. Because those claims involved estate property, both his filing and Delta's litigation conduct constituted acts to exercise control over property of the estate in violation of § 362(a)(3) and beyond the State Court's jurisdiction.

29. QrewLive™, its related software, and the 2016 NDA were not listed in Plaintiff's original 2019 bankruptcy schedules.

30. On motion of the United States Trustee, the Bankruptcy Court reopened the case on December 12, 2024 to investigate potential unadministered assets. In its Order Granting Motion to Reopen, the Court found "that the Claims and the Debtor's interest in the

Software are property of the Debtor's bankruptcy estate, and that neither the Claims nor the Debtor's interest in the Software was abandoned by the Chapter 7 Trustee prior to this case being closed." (*Dkt. 224 at 5; Ex. A.*)

31. On January 2 and February 4, 2025, Plaintiff filed Amended Schedules A/B and C (*Dkts. 238 and 280*) expressly listing QrewLive™, the 2016 NDA, and related trade-secret and misappropriation claims against Delta Air Lines and Craig Alexander as property of the estate. These amendments placed all interested parties on formal notice that the software, NDA, and claims were being administered under the Bankruptcy Code.

32. The Chapter 7 Trustee was reappointed but declined to administer the assets. On February 26, 2025, the Bankruptcy Court entered an Order Approving Trustee's Report of No Distribution, Discharging Trustee, and Closing Estate (*Dkt. 294*), thereby revesting all unadministered assets—including QrewLive™, its software, the 2016 NDA, and the related claims—in Plaintiff pursuant to 11 U.S.C. § 554(c).

33. Throughout this period, the state-court litigation involving Alexander and Delta continued to concern the same QrewLive™ assets that the Bankruptcy Court later confirmed belonged to the estate. Delta actively participated by filing motions to dismiss and opposing Plaintiff's intervention and subsequent motions.

34. On November 19, 2024, the State Court granted Delta's motion to dismiss Intervenor Sonja Ross's claims and dismissed Intervenor's complaint with prejudice as to the Delta Defendants, finding that certain claims were time-barred and that Intervenor lacked privity to sue on the 2016 NDA; the court also held the derivative damages counts failed once the underlying claims failed. (*See Order dated Nov. 19, 2024; Ex. B.*)

35. On December 20, 2024, the State Court entered a separate order dismissing all remaining Intervenor claims against all parties for lack of individual standing after concluding that Intervenor's filings reflected that a corporate entity held ownership of QrewLive™ and that Intervenor had not proceeded derivatively. (*See Order dated Dec. 20, 2024; Ex. C.*)

36. On November 29, 2023, before those orders, Alexander's counsel filed an opposition brief in the state action attaching Plaintiff's bankruptcy docket. That filing was electronically served on Delta's counsel, giving actual notice of Plaintiff's bankruptcy and the estate's interest in QrewLive™.

37. On November 14, 2024, Plaintiff, as Intervenor, filed a *Motion to Stay* in the State Court of DeKalb County based on the automatic-stay provisions of 11 U.S.C. § 362(a)(3). On November 21, 2024, Delta filed its *Opposition to Intervenor's Motion to Stay*. (*See Delta's Motion dated Nov. 21, 2024; Ex. D.*) On December 13, 2024, Plaintiff filed and served in the State Court her *Motion to Void State Court Action for Violation of Automatic Stay and Lack of Jurisdiction*, attaching and serving a copy of the Bankruptcy Court's December 12, 2024 Order on all parties, including Delta. The State Court nevertheless denied the stay by order dated December 19, 2024. To the extent that the December 19, 2024 order adjudicated rights in QrewLive™, the 2016 NDA, or related claims while those assets were property of the bankruptcy estate and after notice, such action is void ab initio under 11 U.S.C. § 362(a)(3) and 28 U.S.C. § 1334(e)(1).

38. When the bankruptcy case closed on February 26, 2025, all unadministered assets—including QrewLive™, its software, the 2016 NDA, and related claims—revested in Plaintiff under § 554(c). Delta's conduct from November 29, 2023

through February 26, 2025 occurred while the automatic stay remained in effect and constituted willful violations of § 362(a)(3).

39. Plaintiff seeks recovery only in the proper legal capacity for each period: damages that accrued from April 23, 2019 through February 26, 2025 are sought as successor to the bankruptcy estate under 11 U.S.C. § 554(c), and damages accruing before the petition and after revesting are sought in Plaintiff's individual capacity; no double recovery is requested.

## COUNT I
## MISAPPROPRIATION OF TRADE SECRETS
(Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.)

40. Plaintiff realleges and incorporates by reference paragraphs 1 through 37 as though fully set forth herein.

41. QrewLive™, including its underlying software architecture, workflow logic, data schema, interface design, functional modules (QTalk, QCentral, QDirect), and supporting documentation, constitutes a "trade secret" within the meaning of 18 U.S.C. § 1839(3) because it:

   1. Derives independent economic value, actual or potential, from not being generally known or readily ascertainable through proper means by others who could obtain economic value from its disclosure or use; and

   2. Was the subject of reasonable measures to maintain its secrecy, including password-restricted storage, nondisclosure agreements, limited disclosures to prospective partners, and confidentiality markings.

11

42. Plaintiff is the creator and owner of the QrewLive™ trade secrets and, as successor in interest to her bankruptcy estate pursuant to 11 U.S.C. § 554(c), possesses full legal title and standing to enforce those rights under the Defend Trade Secrets Act.

43. Between 2016 and 2017, Delta obtained access to QrewLive™ materials under the 2016 Mutual Non-Disclosure Agreement, which limited Delta's use of the information solely to evaluating a potential business relationship with Plaintiff.

44. Delta knowingly and improperly used and disclosed QrewLive™ trade secrets for purposes other than the evaluation permitted by the NDA, including the development and deployment of Family Flight Communications ("FFC"), publicly announced in 2018, which incorporated the same role-based messaging architecture, event-tracking logic, and workflow features disclosed by Plaintiff.

45. Delta's conduct constitutes "misappropriation" as defined in 18 U.S.C. § 1839(5) because Delta:

    1. Acquired trade-secret information it knew or had reason to know was obtained under circumstances giving rise to a duty to maintain secrecy or limit use; and

    2. Used and disclosed that information without consent, knowing that it had been acquired under a duty of confidentiality.

46. At all relevant times, QrewLive™ and its related software were used, transmitted, or intended for use in interstate commerce and were developed for application in the national and international aviation industry, satisfying 18 U.S.C. § 1836(b)(1).

47. As a direct and proximate result of Delta's misappropriation, Plaintiff has suffered loss of trade-secret value, diminished competitive advantage, and unjust enrichment to Delta

through avoided development costs and operational efficiencies derived from QrewLive™.

48. These damages include, without limitation, the fair market value of the misappropriated technology, a reasonable royalty for its unauthorized use, and disgorgement of Delta's profits attributable to the misappropriation.

49. Delta's conduct was willful and malicious, entitling Plaintiff to exemplary damages and attorneys' fees under 18 U.S.C. § 1836(b)(3)(C)–(D).

50. Plaintiff is further entitled to injunctive relief under 18 U.S.C. § 1836(b)(3)(A) to prevent continued use or disclosure of QrewLive™ trade secrets and to require Delta to return, purge, or certify destruction of all derived materials.

51. Plaintiff incorporates by reference the harm and damages alleged herein in support of all other counts.

### COUNT II
### MISAPPROPRIATION OF TRADE SECRETS
(Georgia Trade Secrets Act, O.C.G.A. §§ 10-1-760 et seq.)

52. Plaintiff realleges and incorporates by reference paragraphs 1 through 49 as though fully set forth herein.

53. Plaintiff is the owner and creator of the confidential and proprietary information comprising the QrewLive™ platform, including its software architecture, workflow logic, data models, interface design, and supporting technical materials. This information constitutes "trade secrets" under O.C.G.A. § 10-1-761(4) because it derives economic value from not being generally known or readily ascertainable by others who can obtain

economic value from its use and was the subject of reasonable efforts to maintain its secrecy.

54. Plaintiff took reasonable steps to protect the confidentiality of QrewLive™, including use of nondisclosure agreements, password-protected digital files, limited disclosures to potential business partners, and confidentiality markings on materials provided to Delta.

55. Delta acquired Plaintiff's trade secrets through the 2016 Mutual Non-Disclosure Agreement, which restricted Delta's use of QrewLive™ information to evaluating a potential business relationship.

56. Delta knowingly and improperly used and disclosed those trade secrets for purposes beyond that agreement by incorporating core elements of QrewLive™ into its Family Flight Communications ("FFC") system announced in 2018. Delta thereby misappropriated Plaintiff's trade secrets within the meaning of O.C.G.A. § 10-1-761(2).

57. Delta knew or had reason to know that its use of QrewLive™ information was unauthorized and that it was acquired under circumstances imposing a duty to maintain its secrecy and limit its use.

58. As a direct and proximate result of Delta's misappropriation, Plaintiff has suffered the economic and reputational harms set forth in ¶¶ 45–46, including the loss of exclusive control over her proprietary technology and unjust enrichment to Delta.

59. Delta's conduct was willful and malicious, entitling Plaintiff to exemplary damages and attorneys' fees under O.C.G.A. § 10-1-763(b)–(c).

60. Plaintiff seeks injunctive relief under O.C.G.A. § 10-1-762(a) to prohibit continued use or disclosure and to compel return or destruction of all derivative materials.

61. The damages recoverable under this Count are coextensive with those alleged under Count I and are incorporated by reference.

## COUNT III
## BREACH OF CONTRACT
(2016 Mutual Non-Disclosure Agreement)

62. Plaintiff realleges and incorporates by reference paragraphs 1 through 59 as though fully set forth herein.

63. On August 31, 2016, Delta Air Lines, Inc. and MABA Holdings, LLC executed a Mutual Non-Disclosure Agreement ("2016 NDA") identifying *"QrewLive Communications"* as the subject project. The NDA prohibited the parties from using or disclosing confidential information except to evaluate a potential business relationship and required each party to maintain the confidentiality of any materials received. Plaintiff was the actual source of all QrewLive™ confidential information disclosed under the 2016 NDA and, at minimum, an intended third-party beneficiary entitled to enforce the agreement under O.C.G.A. § 9-2-20(b). Delta knew or, at minimum, should have known that MABA Holdings acted solely as a conduit for Plaintiff's disclosures and that Plaintiff was the real party in interest under the NDA.

64. The QrewLive™ information disclosed to Delta pursuant to the 2016 NDA originated entirely from Plaintiff Sonja Ross, who created, owned, and supplied the proprietary materials that were the subject of the agreement. Plaintiff was therefore both the actual disclosing party in fact and, at minimum, an intended third-party beneficiary of the 2016

NDA within the meaning of O.C.G.A. § 9-2-20(b). Delta knew MABA acted solely as conduit for Plaintiff's disclosures and that Plaintiff was the real party in interest.

65. Delta breached the 2016 NDA by (a) using QrewLive™ confidential information for purposes other than evaluating a potential business relationship, (b) disclosing that information within Delta's internal development teams and to third-party vendors without authorization, and (c) incorporating Plaintiff's proprietary designs, logic, and workflows into Delta's Family Flight Communications ("FFC") platform launched in 2018.

66. Delta further breached its obligations by failing to return, destroy, or otherwise account for the confidential materials provided under the 2016 NDA, despite Plaintiff's lack of authorization for continued retention or use.

67. As a direct and proximate result of Delta's breaches, Plaintiff sustained contractual and reliance damages, including the loss of licensing opportunities, diminution of her proprietary technology's value, and unjust enrichment to Delta. Plaintiff incorporates by reference the specific harm described in ¶¶ 45–46 as further measure of damages.

68. Delta's conduct was willful, malicious, and in conscious disregard of its contractual duties, entitling Plaintiff to recover compensatory damages, consequential damages, and attorneys' fees under O.C.G.A. § 13-6-11.

69. Plaintiff is entitled to injunctive and declaratory relief requiring Delta to cease further use or disclosure of QrewLive™ materials, to account for all uses and distributions thereof, and to certify destruction or return of all confidential information obtained under the 2016 NDA.

**COUNT IV**
**VIOLATION OF AUTOMATIC STAY**
(11 U.S.C. § 362(a)(3), § 362(k))

70. Plaintiff realleges and incorporates by reference paragraphs 1 through 67 as though fully set forth herein.

71. Under 11 U.S.C. § 362(a)(3), the filing of a bankruptcy petition operates as an automatic stay of "any act … to obtain possession of property of the estate or … to exercise control over property of the estate." This stay is self-executing and remains in effect until the property is no longer part of the estate or the case is closed.

72. Upon the filing of Plaintiff's Chapter 7 petition on April 23, 2019, all of her assets—including QrewLive™, its software, the 2016 NDA, and the related claims—became property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a).

73. Neither the Trustee nor the Bankruptcy Court authorized any party to pursue, litigate, or otherwise exercise control over QrewLive™ or the related claims during the pendency of the bankruptcy. Accordingly, those assets remained protected by the automatic stay.

74. On July 15, 2021, while the bankruptcy case was still open, Craig Alexander filed *Alexander v. Delta Air Lines, Inc.*, No. 21A03275 (DeKalb Cty. State Ct.), asserting rights in QrewLive™. Delta actively participated in that litigation, filing motions and pursuing rulings concerning QrewLive™ and the 2016 NDA, without first seeking stay relief from the Bankruptcy Court.

75. Delta's participation in the state-court action and its continued operation of Family Flight Communications ("FFC") after November 29, 2023—when Delta's counsel received actual notice of Plaintiff's bankruptcy and the estate's ownership of

QrewLive™—constituted acts to exercise control over property of the estate in violation of § 362(a)(3).

76. On December 12, 2024, the Bankruptcy Court entered an order expressly finding "that the Claims and the Debtor's interest in the Software are property of the Debtor's bankruptcy estate, and that neither the Claims nor the Debtor's interest in the Software was abandoned by the Chapter 7 Trustee prior to this case being closed." (*Dkt. 224 at 5.*)

77. Plaintiff served that order in the state-court action on December 13, 2024, together with her *Motion to Void State Court Action for Violation of Automatic Stay and Lack of Jurisdiction*, thereby providing actual notice to Delta and all parties.

78. Delta had actual notice of Plaintiff's bankruptcy no later than November 29, 2023 via state-court filings served on its counsel, and actual notice of the Bankruptcy Court's December 12, 2024 order via Plaintiff's filing and service on December 13, 2024; Delta nonetheless continued to litigate and exercise control over QrewLive™ through February 26, 2025.

79. Despite that notice, the State Court entered an order on December 19, 2024 denying Plaintiff's motion to stay, and Delta continued to litigate issues concerning QrewLive™ and the 2016 NDA. Because those assets remained property of the bankruptcy estate, any acts taken to adjudicate or control them after December 12, 2024, were void ab initio under 11 U.S.C. § 362(a)(3) and 28 U.S.C. § 1334(e)(1).

80. The bankruptcy case did not close until February 26, 2025, when all unadministered assets—including QrewLive™, the 2016 NDA, and the related claims—revested in Plaintiff under 11 U.S.C. § 554(c). Delta's conduct from November 29, 2023 through

February 26, 2025 therefore occurred while the automatic stay was in full force and effect.

81. Delta's actions were willful within the meaning of 11 U.S.C. § 362(k) because Delta knew of the stay and intentionally continued to litigate and control estate property despite that knowledge. A willful violation does not require specific intent to violate the law, only that the acts were intentional and undertaken with knowledge of the stay.

82. As a direct and proximate result of Delta's violations, Plaintiff incurred actual injury including the expense of enforcing her bankruptcy rights, delay in regaining control of her intellectual property, and the continued unauthorized use of QrewLive™. Plaintiff incorporates by reference ¶¶ 45–46 for valuation context.

83. Plaintiff is entitled to recover actual damages, attorneys' fees, and costs under 11 U.S.C. § 362(k)(1), as well as punitive damages because Delta's violations were willful, egregious, and demonstrated a reckless disregard for the authority of the Bankruptcy Court.

84. Plaintiff also seeks declaratory and injunctive relief confirming that any state-court orders entered between November 29, 2023 and February 26, 2025 purporting to adjudicate or control QrewLive™ or related claims are void ab initio, and enjoining Delta from any further acts to exercise control over those assets.

85. In the alternative, to the extent this Court determines that jurisdiction over claims arising under 11 U.S.C. § 362(k) lies exclusively in the Bankruptcy Court, Plaintiff respectfully requests that this Count be referred to the United States Bankruptcy Court for the Northern District of Georgia rather than dismissed. Plaintiff asserts this Count in the

interest of judicial economy and to preserve all rights of enforcement arising from Delta's

willful violations of the automatic stay.

## COUNT V
## DECLARATORY AND INJUNCTIVE RELIEF
(28 U.S.C. §§ 2201–2202 and Fed. R. Civ. P. 65)

86. Plaintiff realleges and incorporates by reference paragraphs 1 through 84 as though fully

set forth herein.

87. An actual, justiciable controversy exists between Plaintiff and Delta concerning

ownership, control, and lawful use of QrewLive™, its software, and the 2016 NDA.

Delta continues to claim or exercise control over property that the Bankruptcy Court has

determined to be property of Plaintiff's bankruptcy estate and, upon closing of that case,

revested in Plaintiff pursuant to 11 U.S.C. § 554(c).

88. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaration of the parties' respective rights

and obligations, including but not limited to the following:

1. That QrewLive™, its software, the 2016 NDA, and related claims were property

of the bankruptcy estate under 11 U.S.C. § 541(a) from "April 23, 2019" through

"February 26, 2025";

2. That Delta's participation in the *Alexander v. Delta* litigation and continued use of

QrewLive™ during that period constituted acts to exercise control over estate

property in violation of 11 U.S.C. § 362(a)(3);

3. That any orders or judgments entered by the State Court between "November 29,

2023" and "February 26, 2025" purporting to adjudicate or control QrewLive™,

the 2016 NDA, or related claims are void ab initio under 28 U.S.C. § 1334(e)(1); and

4. That Plaintiff, as the creator and owner of QrewLive™, holds full and exclusive rights to its use, enforcement, and commercialization following revesting on February 26 2025.

89. Plaintiff further seeks injunctive relief under 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, including an order:

1. Enjoining Delta, its officers, agents, employees, and all persons acting in concert with it from any further use, development, disclosure, or control of QrewLive™ and materials derived therefrom;

2. Requiring Delta to account for and return or destroy all QrewLive™-related data, documentation, or derivative works in its possession; and

3. Prohibiting Delta from representing or suggesting that QrewLive™, the 2016 NDA, or related intellectual property belong to any entity other than Plaintiff.

90. Plaintiff has no adequate remedy at law for Delta's continued possession and use of her proprietary materials. Monetary relief alone cannot compensate for the loss of control over unique intellectual property or restore the confidentiality that has been compromised.

91. Injunctive relief is therefore necessary to prevent ongoing and irreparable harm, to maintain the status quo, and to enforce the supremacy of federal bankruptcy and trade-secret law.

21

## COUNT VI
## UNJUST ENRICHMENT
(Pled in the Alternative)

92. Plaintiff realleges and incorporates by reference paragraphs 1 through 89 as though fully set forth herein, except to the extent inconsistent with this Count, which is pled in the alternative under Fed. R. Civ. P. 8(d)(2).

93. This claim is pled in the alternative to Plaintiff's statutory and contractual claims. It is asserted only to the extent the Court determines that the Georgia Trade Secrets Act ("GTSA"), O.C.G.A. § 10-1-760 et seq., does not preempt equitable or quasi-contractual remedies arising from Delta's conduct. Plaintiff expressly preserves this Count as an alternative theory of recovery.

94. If the 2016 Mutual Non-Disclosure Agreement is determined not to be an enforceable contract governing the use of Plaintiff's confidential materials, then Delta's receipt, retention, and use of those materials without compensation constitutes unjust enrichment under Georgia law, O.C.G.A. § 9-2-7.

95. Plaintiff conferred a substantial benefit on Delta by disclosing her proprietary QrewLive™ concepts, designs, and documentation, which Delta used to inform, accelerate, and reduce the cost of developing its internal system known as Family Flight Communications ("FFC").

96. Delta knowingly accepted and retained that benefit, derived economic advantage from it, and did so under circumstances that make it inequitable for Delta to retain the benefit without compensating Plaintiff.

97. As a direct and proximate result of Delta's conduct, Plaintiff lost the fair value of her proprietary materials and potential licensing revenue, while Delta retained economic benefits it did not pay for.

98. Equity and good conscience require Delta to disgorge the unjust enrichment identified in ¶¶ 45–46 and to pay restitution equal to the value of the benefit conferred.

## COUNT VII
## PUNITIVE DAMAGES AND ATTORNEY-FEE REMEDIES

99. Plaintiff realleges and incorporates by reference paragraphs 1 through 96 as though fully set forth herein.

100.    Delta's conduct as alleged in this Complaint was willful, wanton, and undertaken with conscious indifference to the consequences. Delta knowingly used and continued to benefit from Plaintiff's confidential QrewLive™ materials despite its contractual and statutory duties of confidentiality and despite actual notice of Plaintiff's bankruptcy case and the automatic stay.

101.    Delta's actions demonstrate fraud, malice, and conscious disregard for Plaintiff's rights sufficient to warrant an award of punitive damages under O.C.G.A. § 51-12-5.1(b) and, independently, under 18 U.S.C. § 1836(b)(3)(C) (Defend Trade Secrets Act).

102.    Pursuant to O.C.G.A. § 13-6-11, Plaintiff is also entitled to recover litigation expenses and attorneys' fees because Delta's bad-faith conduct, stubborn litigiousness, and unnecessary trouble and expense forced Plaintiff to protect her rights through this action.

103.    The purposes of punitive damages in this context are to punish and deter similar misconduct, to reaffirm the primacy of federal bankruptcy protections, and to ensure that corporations cannot profit from the willful misuse of another's intellectual property or the violation of a bankruptcy court's authority.

104.    Plaintiff therefore seeks:

1.   Punitive damages in an amount to be determined at trial, sufficient to punish Delta and deter similar conduct;

2.   Exemplary damages under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(C), for Delta's willful and malicious misappropriation; and

3.   Attorneys' fees and costs under O.C.G.A. § 13-6-11, O.C.G.A. § 10-1-763(c), and 18 U.S.C. § 1836(b)(3)(D).

105.    Plaintiff realleges and incorporates by reference the harms and damages described in ¶¶ 45–46 of Count I as applicable to all other causes of action, so as to avoid duplication while preserving the distinct remedies available under federal and state law.

## PRAYER FOR RELIEF

**A.** Enter a declaration pursuant to 28 U.S.C. § 2201 that:

1.   QrewLive™, its software, the 2016 NDA, and the related claims were property of Plaintiff's bankruptcy estate under 11 U.S.C. § 541(a) from April 23, 2019 through February 26, 2025;

2.  Delta's participation in *Alexander v. Delta Air Lines, Inc.*, and continued use of QrewLive™ during that period, constituted acts to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3);

3.  Any orders or judgments entered by the DeKalb County State Court between November 29, 2023 and February 26, 2025 purporting to adjudicate or control QrewLive™, the 2016 NDA, or related claims are void ab initio under 28 U.S.C. § 1334(e)(1); and

4.  Plaintiff, as the creator and owner of QrewLive™, holds full and exclusive rights to its use, enforcement, and commercialization following revesting on February 26, 2025.

**B.** Award compensatory damages to Plaintiff in an amount to be determined at trial for Delta's misappropriation of trade secrets, breaches of contract, and violations of the automatic stay.

**C.** Award exemplary and punitive damages pursuant to 18 U.S.C. § 1836(b)(3)(C) and O.C.G.A. § 51-12-5.1(b) for Delta's willful and malicious conduct.

**D.** Award attorneys' fees, costs, and litigation expenses pursuant to O.C.G.A. § 13-6-11, O.C.G.A. § 10-1-763(c), and 18 U.S.C. § 1836(b)(3)(D).

**E.** Enter injunctive relief under 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, including orders:

1.  Enjoining Delta and all persons acting in concert with it from further use, development, or disclosure of QrewLive™ or materials derived therefrom;

2.  Requiring Delta to return or destroy all QrewLive™-related data, documentation, or derivative works in its possession, custody, or control, and to certify such destruction; and

3. Prohibiting Delta from representing or suggesting that QrewLive™, the 2016 NDA, or related intellectual property belong to any entity other than Plaintiff.

**F.** Award actual damages, attorneys' fees, and costs under 11 U.S.C. § 362(k) for Delta's willful violation of the automatic stay, together with punitive damages as the Court deems appropriate.

**G.** Grant restitution or disgorgement of all unjust enrichment realized by Delta from its unauthorized use of Plaintiff's proprietary materials.

**H.** Grant such other and further relief—legal, equitable, or declaratory—as this Court deems just and proper.

**I.** Award pre-and post-judgment interest as permitted by federal and state law.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38 and applicable law, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

this 11th day of November, 2025.

/s/ Kimberly L. Copeland
Kimberly L. Copeland
Georgia Bar No. 186783
261 N. Brunswick St
P.O. Box 1091
Jesup, Georgia 31546
T: (912) 530-7317
E: kim12cope@aol.com

Counsel for Plaintiff
Sonja Ross

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **SONJA ROSS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **DELTA AIR LINES, INC.,** | ) | **CASE NO. 1:2025CV06418** |
| | ) | |
| Defendant. | ) | **JURY DEMAND** |

## **VERIFICATION**

Personally appeared before the undersigned officer authorized to administer oaths, **SONJA ROSS**, who, being first duly sworn, deposes and says as follows:

1. My name is **SONJA ROSS**. I am the Plaintiff in this proceeding, *Ross v. Delta Air Lines, Inc.*, pending in the United States District Court for the Northern District of Georgia.

2. I have read the Complaint and hereby swear or affirm that all of the facts and statements contained therein are true and correct based on my own personal knowledge and belief.

*Sonja Ross*
**SONJA ROSS**, Plaintiff

STATE OF ___Florida___

COUNTY OF ___Duval___

Subscribed and sworn to (or affirmed) before me this 11th day of ___November___, 2025, by **Sonja Ross**, who has produced valid photo identification.

**Notary Public** *Helentin*    Helena Smith    Online Notary

My Commission Expires: ___08/18/2026___ (Seal)

HELENA SMITH
Notary Public - State of Florida
Commission # HH302629
Expires on August 18, 2026

Notarized remotely online using communication technology via Proof.

28