IN THE STATE COURT OF DEKALB COUNTY
STATE OF GEORGIA

| | |
|---|---|
| SONJA ROSS,<br><br>　　　　Plaintiff/Intervenor,<br>v.<br><br>CRAIG ALEXANDER,<br><br>　　　　Plaintiff,<br>and<br><br>DELTA AIR LINES, INC.; EDWARD BASTIAN; RAHUL SAMANT; MATTHEW MUTA, DARRELL HASKIN; DAVID SMITH; DAVID BURTON; CORPORATE DOES 1 TO 5; and JOHN DOES 1 TO 10, MABA HOLDINGS, LLC, KEENAN NIX, DARREN SUMMERVILLE, MORGAN AND MORGAN, P.A., MICHAEL RAFI AND SHEILA ALEXANDER,<br><br>　　　　Defendants | CIVIL ACTION<br>FILE NO.: 21A03275<br><br><u>JURY TRIAL DEMANDED</u> |

### ORDER ON DELTA DEFENDANTS' MOTION TO DISMISS INTERVENOR'S COMPLAINT

This matter came before the Court for a hearing on Defendant Delta Air Lines, Inc.'s ("Delta") and Defendants Edward Bastian, Rahul Samant, Matthew Muta, Darrell Haskin, David Smith, and David Burton's (collectively, the "Individual Defendants" and with Delta, the "Delta Defendants") Motion to Dismiss Intervenor Sonja Ross's ("Intervenor") Complaint. Intervenor's Complaint asserts claims against the Delta Defendants for (1) misappropriation of trade secrets under the Georgia Trade Secrets Act ("GTSA") (Count II); (2) theft and conversion (Count V); (3) civil conspiracy to commit

STATE COURT OF
DEKALB COUNTY, GA.
11/19/2024 3:12 PM
E-FILED
BY: Patricia Nesbitt

theft and conversion (Count VI); (4) breach of the non-disclosure agreement (Count VII); (5) exemplary damages under the GTSA (Count X); (6) punitive damages under O.C.G.A. § 51-12-5.1 (Count XI); and (7) attorneys' fees under the GTSA (Count XII).

As set forth below, the Court finds that Counts II, V, VI, and XI are barred by the statute of limitation and thus are dismissed as to all the Delta Defendants. Count VII is dismissed as to all the Delta Defendants because Intervenor is not a party to the non-disclosure agreement at issue. Finally, because Counts X nor XII are derivative causes of action, these claims must fail because the underlying claims fail.

Thus, for the reasons discussed below, the Delta Defendants' Motion to Dismiss is **GRANTED** and Intervenor's Complaint is **DISMISSED WITH PREJUDICE** as to the Delta Defendants only.

## FACTUAL BACKGROUND

According to her Complaint, the Intervenor "ideated, created, designed and developed QrewLive and its predecessor applications beginning in 2011 and 2012" after discussions with Plaintiff Craig Alexander ("Plaintiff"). Compl. ¶ 5. In 2014, following the alleged "chance encounter" between Plaintiff and then-Delta Chief Executive Officer, Richard Anderson, Plaintiff and Intervenor entered into an agreement regarding the sale or license of QrewLive to Delta. Id. ¶¶ 50–51. Specifically, Intervenor alleges that she authorized Plaintiff "to act as her agent in shopping and promoting the novel technologies and capabilities of her application, QrewLive, to Delta for license and/or purchase" because Plaintiff "touted his proximity to Delta executives." Id. ¶ 6. She alternatively alleges that she and Plaintiff and/or Plaintiff's company, MABA Holdings, LLC ("MABA"), formed a partnership for the specific purpose of selling QrewLive to Delta. Id. ¶ 8.

As a result, between 2014 and 2017, Intervenor alleges that she worked on developing QrewLive, was blind copied on emails between Plaintiff and some of the Individual Defendants, and was otherwise made aware by Plaintiff of his communications with Delta related to the potential sale of QrewLive. Id. ¶ 12. As to Plaintiff's meetings with Delta and some of the Individual Defendants, Intervenor "incorporates all allegations of [Plaintiff's] meetings with the Delta Defendants as her own." Id. ¶¶ 8–9. She acknowledges, however, that she never met or spoke with the Delta Defendants. Intervenor also alleges that Plaintiff did not "disclose the true nature of his relationship with [Intervenor] to Delta" and that Plaintiff presented QrewLive to Delta as if it were his own and "failed to disclose the existence of [Intervenor]" to the Delta Defendants. Id. ¶ 8–9, 11.

As part of her agency and/or partnership relationship with Plaintiff, Intervenor alleges that she authorized Plaintiff to enter into contracts in connection with QrewLive on her behalf as her agent and/or partner but did not authorize Plaintiff "to steal her QrewLive trade secrets or fail to disclose [Intervenor's] existence and ownership to Delta." Id. ¶ 51. In August 2016, Plaintiff, through MABA, entered into and signed a non-disclosure agreement with Delta relating to QrewLive ("NDA"). Id. ¶ 122. In 2017, Plaintiff informed Intervenor that "Delta has lost interest [in QrewLive] and had gone silent." Id. ¶ 55.

Delta launched an application called Flight Family Communication ("FFC") in 2018, which was designed to improve the speed and efficiency of communications among Delta's flight crews. Id. ¶ 56. Intervenor alleges that "Delta misappropriated and raided QrewLive's proprietary information by utilizing this information for the 'creation of its

own app . . . only a few short months after rejecting QrewLive as presented to Delta by [Plaintiff] on [Intervenor's] behalf as her agent and/or partner." Id. ¶ 58.

On July 12, 2021, Plaintiff filed his complaint against the Delta Defendants alleging a violation of the Georgia Trade Secrets Act and other related claims. On March 22, 2023, after learning via discovery that Intervenor had worked with Plaintiff on QrewLive, Delta served Intervenor and her company with non-party document requests. Id. ¶ 65. In connection with her responses to the Delta Defendants' discovery requests, Intervenor alleges that Plaintiff and his former counsel, Keenan Nix, "attempt[ed] to bribe her into agreeing with their fabrication of the origins and ownership of QrewLive." Id. ¶ 66. Intervenor recorded her conversations with Plaintiff and Mr. Nix and produced three audio recordings of those conversations in response to Delta's document request. Id. ¶ 74.

On April 12, 2024, Intervenor filed her Motion to Intervene. Shortly after the Court granted the Motion to Intervene, she filed her Complaint on June 25, 2024. Intervenor's Complaint references and relies heavily on the transcripts of the recorded conversations with Plaintiff and Mr. Nix as well as the Delta Defendants' October 28, 2023 Motion for Terminating Sanctions. Intervenor asserts claims against the Delta Defendants for (1) misappropriation of trade secrets under the GTSA (Count II); (2) theft and conversion (Count V); (3) civil conspiracy to commit theft and conversion (Count VI); (4) breach of the NDA (Count VII); (5) exemplary damages under the GTSA (Count X); (6) punitive damages under O.C.G.A. § 51-12-5.1 (Count XI); and attorneys' fees under the GTSA (Count XII). The Delta Defendants moved to dismiss Intervenor's claims on July 25, 2024. The Court held oral argument on this motion on October 3, 2024.

**MOTION TO DISMISS STANDARD**

Under O.C.G.A. § 9-11-12(b)(6), a trial court may grant a motion to dismiss when "the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts." Key v. Ga. Dep't of Admin. Servs., 340 Ga. App. 534, 535 (2017) (quoting Sanders v. Trinity Universal Ins. Co., 285 Ga. App. 705, 706 (2007)). In doing so, a court "can consider exhibits attached to and incorporated into the complaint" and "[t]o the extent that there is any discrepancy between the allegations in the complaint and the exhibits attached to it, the exhibits control." See Love v. Fulton Cnty. Bd. of Tax Assessors, 348 Ga. App. 309, 310 (2018) (internal quotation marks omitted) (quoting Racette v. Bank of Am., N.A., 318 Ga. App. 171, 172 (2012)).

"A complaint may be dismissed on motion if clearly without any merit; and this want of merit may consist in an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim." Earl v. Mills, 275 Ga. 503, 504 (2002) (quoting Poole v. City of Atlanta, 117 Ga. App. 432, 434 (1968)). Under Georgia law, when a claim is legally defective such that a plaintiff could not prevail, the claim should be dismissed. See Abramyan v. State, 301 Ga. 308, 311–12 (2017) (affirming dismissal of plaintiffs' state constitutional claims when plaintiffs failed to allege existence of a constitutionally protected interest); see also Earl, 275 Ga. at 504 (complaint may be dismissed based on "absence of law to support a claim of the sort made").

## INTERVENOR'S CLAIMS AGAINST DELTA DEFENDANTS

### A. Counts II, V, and VI: Statute of Limitation

The Court finds that the statutes of limitation bar Intervenor's GTSA claim and the other trade secret-related claims. Under Georgia law, Intervenor's GTSA claim is subject to a five-year statute of limitation. See O.C.G.A. § 10-1-766. The theft and conversion and conspiracy to commit theft and conversion claims are subject to a four-year statute of limitation. See O.C.G.A. § 9-3-32; Lee v. Gore, 221 Ga. App. 632, 635 (1996) (applying statute of limitation for underlying tort to civil conspiracy claim). Intervenor moved to intervene on April 12, 2024. As such, to the extent the statute of limitation period was triggered prior to April 12, 2019 (or April 12, 2020 for the theft and conspiracy claims), her claims are time-barred.

The statute of limitation for a claim of misappropriation of a trade secret begins to run when a plaintiff has "reason to suspect" that her trade secret has been misappropriated. Portex Corp. v. Haldopoulos, 284 Ga. App. 510, 516 (2007); see also HealthPrime, Inc. v. Smith/Packett/Med-Com, LLC, 428 F. App'x 937, 942 (11th Cir. 2011) (applying Georgia law and explaining that conversion action accrues at "the time when the plaintiff could first have maintained her action to a successful result" and that "mere ignorance" does not toll the period); Stewart v. Warner, 257 Ga. App. 322, 323 (2002) (dismissing a conversion claim as time-barred because the statute of limitation started to run on the day when damage was sustained by plaintiffs). Once a party suspects a violation, "the discovery rule mandates that a plaintiff must exercise reasonable diligence to discover any misappropriation of trade secrets." Porex, 284 Ga. App. at 516. When "a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of

matters which would have been revealed by such an investigation." Id. (internal quotation marks and citation omitted).

Here, Intervenor's Complaint cites to the transcripts of the recorded conversations between herself and Mr. Nix throughout. Therefore, this Court can consider the recorded conversations at the motion to dismiss stage. See Trop v. City of Brookhaven, 296 Ga. 85, 87 (2014); Handberry v. Stuckberrey Timberland, Inc., 345 Ga. App. 191, 193 (2018). In the recorded conversations, Intervenor references a February 2015 email where she threatened to send Plaintiff and Delta a cease-and-desist relating to QrewLive. Therefore, at a minimum, as of February 2015, Intervenor had a suspicion of misappropriation, and thus a duty to investigate her claims against the Delta Defendants, which would trigger the statute of limitation period. See Phillips v. AWH Corp., 363 F.3d 1207, 1215 (Fed. Cir. 2004), reh'g *en banc* granted, judgment vacated, 376 F.3d 1382 (Fed. Cir. 2004), on reh'g en banc, 415 F.3d 1303 (Fed. Cir. 2005) (statute of limitation triggered where the plaintiff sent letters "indicat[ing] with particularity the technology that he believed" was being misappropriated); see also Epstein v. C.R. Bard, Inc., 460 F.3d 183, 188 (1st Cir. 2006) (similar).

Moreover, Delta publicly announced the launch of FFC in late 2018. See, e.g., Darren Murph, "This New App is Enabling More Delta Flights to Depart on Time", The Points Guys (Nov. 20, 2018), https://thepointsguy.com/news/this-new-app-is-enabling-more-delta-flights-to-depart-on-time/; Noah Long, "How Delta Is Improving Its Operations With A New App", Pulse 2.0, (Nov. 25, 2018), https://pulse2.com/delta-flight-family-communication/. These publications separately put Intervenor on notice of her GTSA, theft, and conspiracy claims, triggering the duty to exercise reasonable diligence. As Intervenor alleges, FFC is "so strikingly similar to QrewLive that even

[Plaintiff]—a layperson in technology and application development—took notice of the misappropriation and filed suit against Delta on July 21, 2021 [sic]," Compl. ¶ 56. Such an allegation makes clear that Intervenor would have been able to discover the purported misappropriation had she "exercise[d] reasonable diligence" once she was on notice of Delta's development of FFC. See Evans v. Kimberly-Clark/HuggiesTM, No. 1:08-CV-1678-TWT, 2008 WL 2986253, at *1–2 (N.D. Ga. July 31, 2008) (dismissing plaintiff's GTSA claim as time-barred because plaintiff saw an advertisement regarding the alleged misappropriation in 2001 but waited until 2008 to file her claim); see also FlexWage Sols. LLC v. Ceridian HCM Holding Inc., No. N23C-04-086, 2024 WL 2132620, at *7 (Del. Sup. Ct. May 13, 2024) (dismissing plaintiff's trade secret misappropriation claim as time-barred because defendant's public announcements demonstrated "clear warning signs of misappropriation").

As such, the Delta Defendants' motion to dismiss Intervenor's GTSA (Count II), theft and conversion (Count V), and conspiracy to commit theft and conversion (Count VI) claims as time barred is **GRANTED**.

B. **Count VII: Breach of Contract**

Intervenor also alleges a claim against the Delta Defendants for breach of the August 2016 NDA between MABA and Delta. Intervenor quotes the NDA in her Complaint and incorporates by reference Plaintiff's Complaint, which includes excerpted pictures of the NDA, including the signature page. Therefore, this Court can consider the NDA at the motion to dismiss stage. See Trop, supra. (approving trial court's consideration of an agreement attached to either the answer to the complaint or response to the motion to dismiss); Handberry, supra (same).

The language of the NDA pledges that Delta – through its agents or employees – cannot use, exploit or reproduce Plaintiff's QrewLive idea unless authorized by MABA. Because the NDA was drafted by Delta, any ambiguities are construed against it. Kennedy v. Brand Banking Co., 245 Ga. 196, 197 (1980) ("It is well settled that where construction of a contract is doubtful, it is to be construed most strongly against the party who prepared it." (internal quotations and citations omitted)). It is undisputed that, from the face of the NDA, Intervenor is not a signatory. The Delta Defendants argue that Intervenor's breach of contract claim against the Delta Defendants should be dismissed because Intervenor is not a party to the NDA.

In arguing against dismissal, Intervenor makes two alternative contentions regarding her participation in the NDA agreement: 1) Plaintiff was acting as her agent or partner when he signed the NDA; and 2) Plaintiff and Intervenor were partners/joint owners of MABA. Intervenor claims that because Plaintiff acted as Intervenor's agent, she was a party to the NDA with Delta. Alternatively, Intervenor claims that when Plaintiff signed the NDA on behalf of MABA, Intervenor was included as a party to the agreement as Plaintiff's partner in MABA.

It is well-settled that only the parties to a contract have standing to sue for a breach of that contract. See O.C.G.A. § 9-2-20. The doctrine of privity of contract requires that only parties to a contract may bring suit to enforce it. Level One Contact v. BJL Enterprises, 305 Ga. App. 78, 80 (2010). The NDA at issue in this matter names only two parties to the contract: Delta and MABA Holdings. Intervenor argues that the mention of "Personnel" and "Affiliates" in the contract indicates an expectation that the parties may have agents, partners, or other business relationships with unnamed persons. However, the NDA, in mentioning "personnel" and "affiliates" does not state that these entities have

rights under the contract. Instead, the NDA merely acknowledges that the signatories may need to disclose confidential information to their partners, agents, or employees, and that these disclosures will not constitute a breach of the NDA. Def. Ex A ¶ 4. Furthermore, the language of the contract also prohibits the parties from assigning their rights or obligations to any other party under the contract without first obtaining written permission from the other party. Def. Ex. A ¶12. Thus, even if Plaintiff and Intervenor were in fact partners or Plaintiff secretly served as Intervenor's agent, the contract gives Intervenor no rights and no obligations. See Davis v. Southside Mfg. Co., 110 Ga. 782, 787 (1900)("[T]he defendant's single contract with parties known to it … could not, without its consent, be split into separate contracts with unknown parties.").

Although Intervenor did not raise this theory in her Complaint, in arguing against dismissal, she also contends she has standing to sue as a third-party beneficiary to the NDA. However, a third-party beneficiary can enforce a contract only "if it clearly appears from the contract that it was intended for [her] benefit." Dominic v. Eurocar Classics, 310 Ga. App. 825, 828 (internal quotation marks omitted) (quoting Kaesemeyer v. Angiogenix, Inc., 278 Ga. App. 434, 437 (2006)). Intervenor is not referenced anywhere in the NDA either explicitly or implicitly. As such, there is no indication that the NDA was intended for her benefit. Moreover, because Delta was unaware of Intervenor's existence, Delta could not have intended the NDA to benefit Intervenor.

Therefore, the Delta Defendants' motion to dismiss Intervenor's breach of contract claim (Count VII) is **GRANTED.**

### C. Counts X, XI, XII: Independent Causes of Action

The Court dismisses Intervenor's claims for exemplary damages under the GTSA (Count X), punitive damages under O.C.G.A. § 51-12-5.1 (Count XI), and attorneys' fees (Count XII) because they are not independent causes of actions.[1] See Capital Inventory, Inc. v. Green, No. 1:20-CV-3224-LMM, 2021 WL 9938794, at *7 (N.D. Ga. June 15, 2021) (GTSA does not provide a standalone cause of action for attorneys' fees); Massey v. Kelly, Inc., 742 F. Supp. 1156, 1158 (N.D. Ga. 1990) ("[T]he Georgia statute for punitive damages is not grounds for an independent cause of action."). Because Intervenor's substantive claims fail, so do her claims for exemplary damages, punitive damages, and attorneys' fees. Ellis v. Gallof, 220 Ga. App. 518 (1996) ("[P]laintiff must prevail on their basic cause of action in order to obtain litigation expenses . . . ." (internal quotations omitted) (quoting Barnett v. Morrow, 196 Ga. App. 201, 203 (1990))); APAC-Southeast, Inc. v. Coastal Caisson Corp., 514 F. Supp. 2d 1373, 1381, 1381 (N.D. Ga. 2007) ("Punitive damages may be awarded under [the Georgia statute for punitive damages] only if the plaintiff prevails on an underlying tort claim." (citing Flynn v. Allstate Ins. Co., 268 Ga. App. 222 (2004)).

The Delta Defendants' motion to dismiss Intervenor's claims for exemplary damages under the GTSA (Count X), punitive damages under O.C.G.A. § 51-12-5.1 (Count XI), and attorneys' fees (Count XII) is **GRANTED**.

---

[1] Intervenor's claim for punitive damages is preempted under the GTSA, as stated previously, but it fails for the separate reason that it is not an independent cause of action.

**IT IS SO ORDERED** that:

1. Delta Defendants' motion to dismiss is **GRANTED**; and

2. Intervenor's Complaint is **DISMISSED** as to the Delta Defendants with prejudice and without leave to amend.

This <u>19th</u> day of <u>November</u>, 2024.

_____
Hon. Kimberly K. Anderson
State Court of DeKalb County

STATE COURT OF
DEKALB COUNTY, GA.
11/19/2024 3:12 PM
E-FILED
BY: Patricia Nesbitt